**NIKE, INC., Plaintiff,**

v.

**ENTER PLAY SPORTS, INC., Defendant.**

**Case No. 3:14–cv–01104–SI.**

United States District Court, D. Oregon.

Signed March 24, 2015.

Jon P. Stride and Eric C. Beach, Tonkon Torp LLP, Portland, OR; Christopher J. Renk, Michael J. Harris, Aaron P. Bowling, Banner & Witcoff, Ltd., Chicago, IL, Attorneys for Plaintiff.

Judson M. Carusone, Behrends, Carusone & Covington Attorneys at Law, P.C., Eugene, OR, Attorneys for Defendant.

## OPINION AND ORDER

MICHAEL H. SIMON, District Judge.

In the pending discovery dispute in this action for breach of contract and misappropriation of trade secrets, Plaintiff moves for entry of a protective order (Dkt. 29) to main-

tain the confidentiality of the parties' respective trade secrets and other confidential information. Defendant does not oppose the need for a protective order, but seeks several additional provisions that Plaintiff opposes. Defendant also cross-moves for "discovery protections" (Dkt. 33), seeking an Order that Plaintiff must first provide a more specific list describing the trade secrets at issue with reasonable particularity before Defendant should be required to provide discovery. Defendant also seeks an Order requiring a specific employee of Plaintiff's to be deposed before Defendant should be required to provide discovery. Finally, Defendant seeks an Order limiting what it needs to disclose to Plaintiff in discovery. For the reasons stated below, Plaintiff's Motion for Entry of the Court's Form Two–Tier Protective Order (Dkt. 29) is GRANTED and Defendant's Cross Motion for Discovery Protections (Dkt. 33) is DENIED.

## BACKGROUND

Plaintiff NIKE, Inc. ("NIKE") is an Oregon corporation with its principal place of business in Beaverton, Oregon. NIKE designs, markets, and distributes athletic footwear, apparel, equipment, and accessories for a wide variety of sports and fitness activities. Defendant Enter Play Sports, Inc. ("EPS") is a New York corporation with its principal place of business in Warrensburg, New York. EPS is owned by Brad and Terri Jamison. Mr. Jamison states that he had acquired a lace braiding machine initially for manufacturing athletic equipment for a new sport and later became a primary inventor practicing the art of lace braiding.

In its Complaint, NIKE asserts two claims against EPS. Nike's first claim is for breach of contract, alleging that EPS has breached a Non–Disclosure Agreement ("NDA") between NIKE and EPS. NIKE's second claim alleges a violation of the Oregon Trade Secrets Act, Or.Rev.Stat. § 646.461 *et seq.* EPS has filed an Answer, denying NIKE's claims and asserting two counterclaims. EPS's first counterclaim seeks a declaration that its patent applications either do not contain any confidential information subject to the parties' NDA or that any such infor-

mation is not subject to the protections of the NDA based on the NDA's express exclusions. EPS's second counterclaim seeks attorney fees and other costs under the parties' NDA.

As alleged by NIKE, in 2012 NIKE conceived of proprietary and confidential concepts regarding a three-dimensional braided "upper" for athletic footwear ("3–D Braided Upper Concepts"). As part of vetting its 3–D Braided Upper Concepts, NIKE looked to retain a company with braiding capabilities to build samples for NIKE. NIKE discovered EPS through an Internet search. EPS has a website, where EPS highlights a braided play ball it manufactures at a braiding facility in New York. In late 2012, NIKE contacted EPS to inquire whether EPS could build samples of the 3–D Braided Upper Concepts for NIKE. At that time, EPS confirmed that it had no prior experience with braided uppers for footwear, and that it had no plans to develop or work on braided uppers for footwear.

EPS and NIKE signed the NDA at issue, dated December 5, 2012. The purpose of the NDA was to enable NIKE to share its proprietary and confidential 3–D Braided Upper Concepts with EPS so that EPS could build samples for NIKE. According to Nike, its 3–D Braided Upper Concepts and related documentation constitute "Confidential Information" under the NDA. After EPS signed the NDA, NIKE disclosed its proprietary and confidential 3–D Braided Upper Concepts to EPS. NIKE also created documents and sketches related to the concepts, which it also disclosed to EPS. In early 2013, EPS built samples of NIKE's 3–D Braided Upper Concepts using NIKE's Confidential Information. NIKE paid EPS for the samples.

On May 21, 2013, and June 3, 2013, unbeknownst to NIKE at the time, EPS filed provisional patent applications with the U.S. Patent and Trademark Office (the "Patent Office") directed to NIKE's Confidential Information, including at least three-dimensional braided uppers and methods of fabricating three-dimensional braided uppers. EPS later filed a non-provisional application claiming priority to the provisional applications. (These applications are collectively referred to as the "Applications.") In its Applications,

EPS summarizes its alleged invention and allegedly describes the Confidential Information NIKE disclosed to EPS pursuant to the NDA. EPS's Applications also include figures that are allegedly based on the sketches and other Confidential Information NIKE provided to EPS pursuant to the NDA and claims directed to Confidential Information NIKE disclosed to EPS pursuant to the NDA. Complaint, ¶¶ 7–13, 1823 (Dkt. 1).

NIKE filed its Complaint under seal, and its Complaint includes numerous specifics, including drawings and illustrations. As stated in EPS's Answer, Affirmative Defenses, and Counterclaim (Dkt. 18), also filed under seal, EPS contends, among other things, that the Confidential Information claimed by NIKE either is not disclosed in EPS's patent Applications or that any information that is disclosed is not subject to the protections of the NDA based on the NDA's express exclusions.

## STANDARDS

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed.R.Civ.P. 26(b)(1).[1] Among the limitations stated in Rule 26(b)(2)(C) is the direction that the court must limit the extent of discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R.Civ.P. 26(b)(2)(C)(iii). This is known as the "rule of proportionality." In addition, Rule 26 provides that the court may, for good cause, issue an order to protect a party or person from oppression or undue burden, including "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R.Civ.P. 26(c)(1)(G).

## DISCUSSION

### A. Appropriate Form of Protective Order

By Local Rule, the District of Oregon has approved two model forms of sample protective orders that may be used under Rule 26(c) of the Federal Rules of Civil Procedure. *See* LR 26–4. These forms include a "single-tier" protective order and a "two-tier" protective order. The latter includes a category for "Attorneys' Eyes Only," which is generally the most appropriate form for use in trade secret cases. These forms have been approved by the District's Local Rules Committee and by the Judges of this District.

In this case, NIKE proposes using the District's form "two-tier" protective order. EPS objects on two grounds. First, EPS seeks to deny access to NIKE's in-house counsel of materials marked "Attorneys' Eyes Only." *See* Dkt. 35–1, at 6. EPS, however, does not offer sufficient good cause for this modification of the approved form "two-tier" protective order. EPS's first objection is overruled. Second, EPS seeks to add an additional level of record-keeping governing to whom "Attorneys' Eyes Only" material has been shown. *See* Dkt. 35–1, at 9. Again, EPS does not offer sufficient good cause for

---

**1.** The Judicial Conference of the United States recently approved several significant proposed changes to the Federal Rules of Civil Procedure, including changes to Rule 26(b). These proposed changes are pending before the United States Supreme Court, which has until May 1, 2015, to decide whether to forward the proposed changes to Congress. 28 U.S.C. § 2074(a). If forwarded by the Supreme Court, the proposed changes will become effective seven months later, December 1, 2015, unless Congress acts to the contrary. *Id.* The Court's ruling on the pending discovery motion is based on the rules that are now in effect.

this modification of the approved form "two-tier" protective order. EPS's second objection is overruled. The Court will enter NIKE's proposed form of "two-tier" protective order. *See* Dkt. 29, at 6–14.

## B. Whether Plaintiff Must First Disclose Its Trade Secrets with Greater Particularity

EPS argues that NIKE should be required to further describe with particularity its alleged trade secrets at issue in this case before it can proceed with discovery. EPS cites to several cases in support of its position, including *DeRubeis v. Witten Techs., Inc.,* 244 F.R.D. 676, 680–81 (N.D.Ga.2007) (weighing the policy considerations for discovery when trade secret misappropriation has been alleged and concluding "that it is appropriate in this case to require [the plaintiff] to first identify with 'reasonable particularity' those trade secrets it believes to be at issue"); *Switch Commc'ns Grp. v. Ballard,* 2012 WL 2342929, at *5 (D.Nev. June 19, 2012) (holding that a defendant was not required to respond to the plaintiff's discovery requests until the plaintiff "provides a description of its alleged trade secrets with reasonable particularity").

In other cases, however, courts have declined to require the plaintiff to identify its alleged trade secrets before being allowed to conduct discovery. *See, e.g., Global Advanced Metals USA, Inc. v. Kemet Blue Powder Corp.,* 2012 WL 3884939, at *7 (D.Nev. Sept. 6, 2012) (affirming magistrate judge's decision not to require the plaintiff to identify its trade secrets "because of their voluminosity" and noting that "a listing of every trade secret would draw an objection from Defendant that they must be narrowed, leading to additional discovery disputes and delays, and that a protective order against disclosure would protect Defendant's interests"); *Montgomery v. eTreppid Techs., LLC,* 2008 WL 2277118, at *10–11 (D.Nev. May 29, 2008) (permitting eTreppid to take discovery on its trade secret counterclaim against Montgomery without first specifically identifying its own trade secrets at issue).

One relatively recent case is particularly instructive for identifying the criteria that a district court should consider in deciding this question. In *BioD, LLC v. Amnio Tech., LLC,* 2014 WL 3864658 (D.Ariz. Aug. 6, 2014), the court noted:

> [d]etermining whether a trade secret has been misappropriated usually involves examining things that the other party considers its own trade secrets. There is no privilege excepting trade secrets from discovery, but courts must exercise discretion to avoid unnecessary disclosures of such information. [P]laintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets.

*BioD,* 2014 WL 3864658, at *4 (alterations in original) (quoting *Dura Global Technologies, Inc. v. Magna Donnelly, Corp.,* 2007 WL 4303294, at *2 (E.D.Mich. Dec. 6, 2007)). The Court in BioD continued, however, by observing: "A plaintiff also might not be required to identify its trade secrets with reasonable particularity prior to discovery." *Id.* at *5. As explained by the court:

> [C]ourts have identified at least three policies which support allowing the trade secret plaintiff to take discovery prior to identifying its claimed trade secrets. First, courts have highlighted a plaintiff's broad right to discovery under the Federal Rules of Civil Procedure. Second, the trade secret plaintiff, particularly if it is a company that has hundreds or thousands of trade secrets, may have no way of knowing what trade secrets have been misappropriated until it receives discovery on how the defendant is operating. Finally, if the trade secret plaintiff is forced to identify the trade secrets at issue without knowing which of those secrets have been misappropriated, it is placed in somewhat of a "Catch–22" [because] [i]f the list is too general, it will encompass material that the defendant will be able to show cannot be trade secret. If instead it is too specific, it may miss what the defendant is doing.

*Id.* (alterations in original) (quoting *DeRubeis,* 244 F.R.D. at 680).

646

Applying these considerations here, the Court has closely reviewed NIKE's Complaint and finds NIKE's specifications of the trade secrets at issue to be sufficient, at least to permit discovery to proceed. The Court notes that EPS answered the Complaint. EPS did not move under the Federal Rules of Civil Procedure to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) and did not move, or alternatively move, for a more definite statement under Rule 12(e). Further, EPS asserted in its first counterclaim that NIKE's alleged trade secrets either were not disclosed in EPS's patent Applications or, to the extent they were, then they were not subject to the protections of the NDA based on the NDA's express exclusions. NIKE's claimed trade secrets must have been sufficiently clear to EPS to permit EPS to make these assertions.

## C. Sequencing Discovery as Between Depositions and Document Production

EPS also argues that it should be permitted to depose NIKE's employee Robert Bruce before EPS is required to produce any documents in response to NIKE's discovery requests. NIKE responds by noting, among other things, that its discovery requests have been pending for several months and EPS has produced nothing, and that EPS has not yet even served a notice for the deposition of Mr. Bruce. The typical course of discovery is for parties to exchange responsive documents and electronically-stored information ("ESI") before taking depositions. If EPS desires to take Mr. Bruce's deposition before requesting or receiving NIKE's documents and ESI, it may do so. EPS may not, however, refuse to produce its own documents and ESI responsive to NIKE's requests until after that deposition has taken place.

## D. EPS's Additional Objections to NIKE's Requested Discovery

EPS has raised additional objections to NIKE's discovery requests, arguing that unless discovery is limited EPS "will be forced to disclose a large amount of confidential information and trade secrets that are irrelevant to the contract dispute before the

Court." Dkt. 33, at 4. This dispute is insufficiently precise at this stage to permit the Court to make a meaningful ruling. The parties are directed to confer about discovery in light of the rulings stated in this Opinion and Order. If EPS continues to object to producing certain information, NIKE may file a motion to compel, pursuant to Rule 37(a)(3)(B)(iv) of the Federal Rules of Civil Procedure.

## CONCLUSION

Plaintiff Nike, Inc.'s Motion for Entry of the Court's Form Two-Tier Protective Order (Dkt. 29) is GRANTED; Defendant Enter Play Sports, Inc.'s Cross Motion for Discovery Protections (Dkt. 33) is DENIED.

**IT IS SO ORDERED.**